UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
  In Re:

          DOUGLAS J. FILARDO

                 Debtor.

---------------------------------------------------------------X

                                 Chapter 13
                                 Case No. 21-71691 (REG)

**STAR AUTO SALES OF QUEENS LLC'S MEMORANDUM OF LAW IN OPPOSITION TO DEBTOR'S OBJECTION TO PROOF OF CLAIM #8-1 AND IN SUPPORT OF ITS CROSS-MOTION TO (i) DISMISS THE CASE PURSUANT TO 11 U.S.C. § 109(e); or (ii) IN THE ALTERNATIVE, TO MODIFY THE STAY SOLELY TO ALLOW THE STATE COURT INQUEST TO PROCEED**

                                                    Gary C. Fischoff, Esq.
                                                   BERGER, FISCHOFF, SHUMER,
                                                   WEXLER & GOODMAN, LLP
                                                   *Attorneys for Star Auto Sales of Queens LLC*
                                                   6901 Jericho Turnpike, Suite 230
                                                   Syosset, NY 11791
                                                   (516) 747-1136
                                                   gfischoff@bfslawfirm.com

                                                   Jamie S. Felsen, Esq.
                                                   MILMAN LABUDA LAW GROUP PLLC
                                                   *Attorneys for Star Auto Sales of Queens LLC*
                                                   3000 Marcus Avenue, Suite 3W8
                                                   Lake Success, New York 11042
                                                   (516) 328-8899
                                                   jamie@mllaborlaw.com

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted on behalf of Creditor, Star Auto Sales of Queens LLC ("Star"), in opposition to Debtor, Douglas Filardo's ("Debtor") objection to Star's proof of claim and in support of its cross-claim to dismiss Debtor's bankruptcy filing pursuant to 11 U.S.C. § 109(e), or, in the alternative, to modify the stay to allow the state court inquest to proceed.

The Debtor's objection to Star's proof of claim, which is littered with blatant misrepresentations in a desperate attempt to preclude Star's valid proof of claim, should not be considered because dismissal of Debtor's case is warranted. The Debtor is ineligible for relief under Chapter 13 of the United States Bankruptcy Code since the Debtor's noncontingent, liquidated and unsecured debts to Star are $550,721.86, in excess of the $419,275 limit set forth in 11 U.S.C. § 109(e).

## STATEMENT OF FACTS

The Court is respectfully referred to the accompanying Declaration of Jamie S. Felsen, dated December 10, 2021 (hereinafter the "Felsen Declaration"), together with all exhibits thereto, for a full rendition of the facts necessary to decide the instant motion.

The essential facts, however, are as follows:

On December 15, 2017, Star Auto Sales of Queens LLC (hereinafter "Star") commenced an action against the Debtor in the Supreme Court of the State of New York, County of Queens, under Index Number 717443/2017 ("state court action"). In the state court action, Star brought claims against the Debtor for, *inter alia*, (1) unjust enrichment; (2) money had and received; (3) promissory estoppel; (4) breach of fiduciary duty; (5) breach of duty of loyalty; (6) violation of the faithless service doctrine; and (7) conversion. Each of the claims in the state court action are based on schemes in which the Debtor embezzled millions of dollars from Star, his long-time

2

employer who employed him as its Sales Manager.

On March 15, 2021, in the state court action, the court issued an order striking Debtor's Answer pursuant to CPLR § 3126 because of the Debtor's willful and contumacious conduct, for a period of well over a year, in failing to appear for his deposition despite court Orders and a stipulation to do so and the express direction of the Court. (Felsen Declaration Exh. A).

The court in the state court action scheduled an inquest for September 27, 2021.

On September 24, 2021, one business day before the inquest, the Debtor filed with the Appellate Division Second Department an order to show cause seeking a temporary restraining order to immediately stay the inquest. (Felsen Declaration Exh. B). The Appellate Division denied the Debtor's request for a temporary restraining order. (Felsen Declaration Exh. C).

Late in the afternoon of September 24, 2021, after the Appellate Division Second Department denied the Debtor's request, the Debtor sought a stay from the Supreme Court, Queens County, the court before which the inquest was scheduled. (Felsen Declaration Exh. D). When the Supreme Court, Queens County did not immediately respond to the Debtor's request, solely as a last resort to stay the inquest from proceeding, on September 27, 2021, merely a few hours before the inquest was scheduled to proceed, the Debtor filed a Chapter 13 bankruptcy Petition in this court which filing has automatically stayed the state court action.

During the Debtor's period of disloyalty to Star covering the three (3) year statutory period of December 15, 2014 through December 15, 2017 that survived the Debtor's motion to dismiss, he was paid $550,726.86 in compensation by Star.[1] (See Felsen Declaration Exh. E). This

---

[1] In the state court action, on April 19, 2019, the state court granted the Debtor's partial motion to dismiss the Amended Verified Complaint, thus limiting the period for which Star could recover to a period of three years commencing on December 15, 2014. Star filed an appeal (which has now been stayed due to Debtor's Petition) arguing that the period should not be limited to the three-year period and should cover the entire period that the Debtor was a faithless servant. If the appeal is granted, it would add $1,151,165.63 more in noncontingent, liquidated,

compensation which the Debtor is required to disgorge to Star under the faithless servant doctrine, is a noncontingent, liquidated, unsecured debt due to Star which exceeds the $419,275 limit under 11 U.S.C. § 109(e).[2] The Debtor is ineligible for relief under Chapter 13 of the United States Bankruptcy Code since the Debtor's noncontingent, liquidated and unsecured debts exceed the $419,275 limit set forth in 11 U.S.C. § 109(e).

## STANDARD

11 U.S.C. § 109(e) provides, in relevant part, that "[o]nly an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $419,275 and noncontingent, liquidated, secured debts of less than $1,257,850. . . may be a debtor under chapter 13 of this title." 11 U.S.C. § 109(e).

In determining if these limits have been exceeded, the Court is not limited to a review of the Debtor's schedules. In re Fioriglio, 2018 Bankr. LEXIS 906 (Bankr. E.D.N.Y. Mar. 27, 2018); In re Shukla, 550 B.R. 204, 211 (Bankr. E.D.N.Y. 2016) ("Though a [s]ection 109(e) analysis generally begins with a review of the debtor's schedules, a court may also consider materials outside of the debtor's schedules") quoting Stebbins v. Artificial Horizon, Ltd., 2016 U.S. Dist. LEXIS 34680 (E.D.N.Y. Mar. 17, 2016). "The schedules, while important, are not binding, and must be considered along with "all readily available evidence, including claims filed, any liens that are obviously avoidable, and the like." In re Fioriglio at *8 quoting In re Garcia, 520 B.R. 848, 853 (Bankr. D.N.M. 2014) and citing In re Barcal, 213 B.R. 1008, 1015 (B.A.P. 8th Cir. 1997) ("At a hearing on eligibility, the court should [thus] canvass and review the debtor's

---

unsecured debt due by the Debtor to Star. (See Felsen Declaration Exh. E).

[2] In addition, there is an anticipated several million dollars in non-liquidated debts that will be owed by the Debtor to Star.

4

schedules and proofs of claim, as well as other evidence offered by a debtor or the creditor to decide only whether the good faith, facial amount of the debtor's liquidated and non-contingent debts exceed statutory limits.")

The debtor has the burden of establishing eligibility under 11 U.S.C. § 109(e). In re Shukla, 550 BR 204, 210 (Bankr. E.D.N.Y. 2016).

Once a proof of claim is filed under 11 U.S.C. §501 it "is deemed allowed unless a party in interest objects." 11 U.S.C. § 502(a). "A proof of claim that complies with the filing and documentary requirements of Federal Rule of Bankruptcy Procedure 3001 and Official Form 10 'shall constitute *prima facie* evidence of the validity and amount of the claim.'" In re Taranto, 2012 WL 1066300, at 5 (Bankr. E.D.N.Y. Mar. 27, 2012) citing In re King, 2010 WL 4290527, at 2 (Bankr. N.D.N.Y. Oct. 20, 2010). "The objecting party bears the burden of putting forth sufficient evidence to rebut the prima facie validity of the claim." Primavera Familienstiftung v. Askin, 130 F.Supp.2d 450, 540 (S.D.N.Y.2001) (citing In re St. Johnsbury Trucking Co., 206 B.R. 318, 323 (Bankr.S.D.N.Y.1997)), aff'd, 221 B.R. 692 (S.D.N.Y.1998), aff'd, 173 F.3d 846 (2d Cir.1999). "The Debtors therefore must come forth with evidence that if believed would refute at least one of the allegations essential to the claim under applicable law." In re Pinnock, 594 B.R. 609, 612 (Bankr. S.D.N.Y. 2018). "Such evidence must be sufficient to demonstrate a true dispute and must have probative force equal to the contents of the claim." In re Koloch, 416 B.R. 375, 378 (Bankr. E.D.N.Y. 2009), objections overruled, No. 8-07-73919-DEM, 2010 WL 1380375 (Bankr. E.D.N.Y. Mar. 31, 2010) citing In re Allegheny Int'l, Inc., 954 F.2d 167 (3d Cir.1992).

# ARGUMENT

## POINT I

### THE DEBTOR'S NONCONTINGENT, LIQUIDATED, UNSECURED DEBT TO STAR EXCEEDS $419,275 WARRANTING DISMISSAL OF THE PETITION

Dismissal of Debtor's bankruptcy petition is warranted because the damages for Debtor's violation of the faithless servant doctrine under state law are non-contingent liquidated debts.

While the other components of Star's proof of claim will be discussed later herein, the threshold issue of the Debtor's eligibility under Section 109(e) is unequivocally resolved against the Debtor by state law under the faithless servant doctrine.

#### A. Full Faith and Credit Must Be Given to the State Court's Order Finding Debtor Liable

The Debtor's answer was stricken and therefore the allegations in the complaint are incontrovertible facts in the case and liability has been established. See Rawlings v. Gillert, 104 AD3d 929, 931 (2d Dept 2013); Napolitano v. Branks, 128 A.D.2d 686 (2d Dept 1987).

Initially, when evaluation a proof of claim supported by a finding of liability in a state court, the bankruptcy court is, "...bound to the liability determinations in the state judgment unless an exception existed to prevent operation of the judgment's preclusive effect." Kelleran v. Andrijevic, 825 F.2d 692, 694 (2d Cir. 1987). The striking of an answer and the finding of liability is equivalent to a finding of default judgment in New York. In re Aegis Realty Corp., 301 B.R. 116, 119 (Bankr. S.D.N.Y. 2003). "Because New York courts would give preclusive effect to [a] New York default judgment, the bankruptcy court [is] required to do so as well." In re Shiver, 396 B.R. 110, 120 (Bankr. S.D.N.Y. 2008). The only recognized exception to this rule is if the judgment is "procured by collusion or fraud, or where the rendering court lacked jurisdiction." Id. See also In re Aegis Realty Corp., 301 B.R. 116, 119 (Bankr. S.D.N.Y. 2003).

Notably, in In re Aegis Realty Corp., like in the instant case, the state court struck the

debtors' answer due to the debtors' failure to provide discovery. 301 B.R. at 119. The Court determined that the default due to the striking of the answer because of debtors' failure to comply with discovery was entitled to full faith and credit:

> The Decision was rendered by a court of competent jurisdiction and is entitled to full faith and credit. The Decision also was on the merits, although, based on the Debtors' failure to provide discovery, the state court struck the Debtors' answer and precluded affirmative proof at the inquest over the Debtors' objection. Although the Decision was not specifically a default judgment, " '[a] judgment of a court having jurisdiction of the parties and of the subject matter operates as res judicata, in the absence of fraud or collusion, even if obtained upon a default.' "

Id. citing Saud v. The Bank of New York, 929 F.2d 916, 919 (2d Cir.1991), quoting Morris v. Jones, 329 U.S. 545, 550–51, 67 S.Ct. 451, 91 L.Ed. 488 (1947).

### B. Debtor's Noncontingent, Liquidated, Unsecured Debt to Star Exceeds $419,275

Under state law, the damages for violating the faithless servant doctrine are readily computable – it is the compensation received during the period of disloyalty. The claim of Star is therefore noncontingent, and damages are easily computable under the faithless servant doctrine.

In this case, the compensation that the Debtor received during the three (3) year statutory period for which the Debtor's answer was stricken is $550,721.86 which exceeds the Section 109(e) limit for general unsecured claims of $419,275,00.

This court need not look any further in this case and need not determine the amounts due under any other theories or claims.

Section 109(e), of the Bankruptcy Code (entitled "Who may be a debtor") sets forth, in relevant part, as follows:

> (e) Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $419,275 and noncontingent, liquidated, secured debts of less than $1,257,850, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the dateof

7

the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $419,275 and noncontingent, liquidated, secured debts of less than $1,257,850 may be a debtor under chapter 13 of this title.

As explained by the court in In re Murphy, 374 B.R. 73, 76 (Bankr. W.D.N.Y. 2007):

> In connection with a Section 109(e) eligibility analysis, which by the specific terms of the Section must be on the date of the petition: (1) the term debt is sufficiently broad to cover any possible obligation to make payment, whether that obligation is liquidated or unliquidated, fixed or contingent, disputed or undisputed, and whether or not it is embodied in a judgment; (2) a debt is contingent if it does not become an obligation to make payment until the occurrence of a future event, but it is noncontingent when all of the events giving rise to liability have occurred prior to the debtor's filing for bankruptcy; (3) a debt is not contingent merely because a Debtor disputes the debt or claim; (4) although a creditor's ability to collect the sum due may depend upon adjudication that does not make the debt contingent; (5) a debt is liquidated if the amount due is fixed or certain or otherwise ascertainable by reference to an agreement or by a simple computation; and (6) the existence of a dispute over either the underlying liability or the amount of the debt does not automatically render the debt either contingent or unliquidated, and disputed debts are included in the calculation of the amount of debt for Section 109(e) eligibility purposes.

Id. at 76-77 citing Mazzeo v. United States (in Re Mazzeo), 131 F.3d 295 (2d Cir. 1997).

In the state court action, one of the causes of action for which the Debtor's Answer was stricken is the faithless servant doctrine. New York's strict application of the faithless servant doctrine "mandates the forfeiture of all compensation . . . where . . . one who owes a duty of fidelity to a principal is faithless in the performance of his services." Art Capital Group, LLC v. Rose, 2017 N.Y. App. Div. LEXIS 2670 (N.Y. App. Div. 1st Dep't 2017) (citations omitted). This includes all compensation paid to the faithless employee throughout the period of disloyalty. See Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184, 200, 203 (2d Cir. 2003) (requiring disgorgement of over $4 million dollars in compensation); Samba Enters., LLC v. iMesh, Inc., 2009 U.S. Dist. LEXIS 23393, 2009 WL 705537, *9 (S.D.N.Y. Mar. 19, 2009) (defendant not entitled to any compensation from plaintiff and required to disgorge all profits it

8

received); Consolidated Edison Co. v. Zebler, 40 Misc. 3d 1230(A), 1230A (N.Y. Sup. Ct. Aug. 20, 2013) (ordering that the defendant forfeit all of the $394,405.88 in salary and non-pension benefits he received during the 26-month period of his disloyalty, even though he claimed to be acting disloyal only 15% of the time); City of Binghamton v. Whalen, 141 A.D.3d 145, 147 (N.Y. App. Div. 3d Dep't 2016) (holding that defendant, a salaried employee found to be a "faithless servant" for stealing nearly $50,000 from the city, was required to forfeit all compensation earned from plaintiff due to his "persistent pattern of disloyalty" during the period covered by the action and there was no basis for apportioning forfeiture to the specific tasks as to which defendant was disloyal because apportioning would run afoul of the strict application of the forfeiture doctrine and would have the ill effect of "embroiling courts in deciding how much general compensation should be forfeited, where the general compensation was awarded while the agent was acting disloyally in some, but not all of his [or her] work); Calderon v. Mullarkey Realty, LLC, 2018 U.S. Dist. LEXIS 97224, 21 (E.D.N.Y. June 10, 2018) (summarizing jury verdict in separate action commenced against former employee wherein jury awarded damages in the amount of $276,044.98, including repayment of "key money" to the tenants and the disgorgement of all compensation paid to the former employee from the date of his breach of duty of loyalty to the last date of his employment).

The Debtor was paid $550,726.86 in compensation during the three (3) year statutory period during which he was disloyal – an amount which is easily calculated simply by referring to the Debtor's wage records from Star. (See Felsen Declaration Exh. E). This is a noncontingent, liquidated, unsecured debt due to Star which exceeds the $419,275 limit under 11 U.S.C. § 109(e). In re Stebbins, 2015 Bankr. LEXIS 551 (Bankr. E.D.N.Y. Feb. 24, 2015) (dismissing Chapter 13 case because pre-petition default on payment of indebtedness was a noncontingent debt and

because the amount of the liability was readily ascertainable at any time based upon the written contracts, it was liquidated) In re Murphy, 374 B.R. 73 (Bankr. W.D.N.Y. 2007) (dismissing Chapter 13 case because pre-petition debt for legal services exceeded limit under 11 U.S.C. § 109(e))

Accordingly, the Debtor is ineligible for relief under Chapter 13 of the United States Bankruptcy Code since the Debtor's noncontingent, liquidated and unsecured debts exceed the $419,275 limit set forth in 11 U.S.C. § 109(e) warranting dismissal of the Debtor's case.

## POINT II

### ALTERNATIVELY, THE STATE COURT STAY SHOULD BE LIFTED SO THE STATE COURT CAN CONDUCT AN INQUEST ON DAMAGES

In the unlikely event that this Court determines that the damages for the Debtor's violation of the faithless servant doctrine is not a noncontingent, liquidated and unsecured debt exceeding the $419,275 limit (which it is), then the court should lift the stay so the state court can conduct an inquest on damages.

As stated *supra*, due to the striking of the Debtor's Answer, the Debtor admitted all traversable allegations in the complaint, including the basic allegation of liability, and therefore, the Debtor is prohibited from arguing against the merits of Star's underlying claims.

An inquest was scheduled in state court for September 27, 2021 the same day the Debtor abruptly commenced the instant bankruptcy proceeding after the Appellate Division Second Department denied the Debtor's motion to stay the inquest on September 24, 2021. This court should lift the stay against Star for the sole purpose of allowing the state court, who is most familiar with the underlying claims, to conduct an inquest concerning the amount of damages for which the Debtor is liable to Star.

"When deciding whether sufficient cause exists to lift the automatic stay, the court is

guided by the factors outlined in *Sonnax Indus., Inc. v. Tri Component Prods. Corp.*, 907 F.2d 1280, 1286 (2d Cir.1990)" In re Bally Total Fitness of Greater New York, Inc., 402 B.R. 616, 623 (Bankr. S.D.N.Y.), aff'd, 411 B.R. 142 (S.D.N.Y. 2009).

As set forth in Sonnax, "the burden of proof on a motion to lift or modify the automatic stay is a shifting one. Section 362(d)(1) requires an initial showing of cause by the movant, while Section 362(g) places the burden of proof on the debtor for all issues other than "the debtor's equity in property," 11 U.S.C. § 362(g)(1). In re Sonnax Indus., Inc., 907 F.2d 1280, 1285 (2d Cir. 1990). While the decision whether or not to lift the stay, "...is committed to the discretion of the bankruptcy judge" Id. at 1286, Sonnax lists twelve factors to be weighed in determining whether litigation should continue in state court:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

Id.

Only those factors "relevant to a particular case need to be considered and the Court need not assign them equal weight." In re Touloumis, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994) citing Sonnax. In this case, factors 1, 3, 10, 11 and 12 support a lifting of the stay and proceeding in state court on the inquest as to damages. Resolution of the state court action would result in a complete resolution of the issue as to whether the debtor is eligible for Chapter 13 relief. The state court

action has been pending since 2017 and the only remaining step in the state court action is an inquest, which is at most a one-day hearing that can be scheduled expeditiously and produce a final resolution as to the amount of the debt. As noted *supra*, the inquest, which will result in a final determination, was scheduled for the day Debtor filed the Petition in this court. Additionally, one of the claims in the state court action is for breach of the Debtor's fiduciary duty. Moreover, the balance of the harm also strongly weighs in favor of this limited lifting of the stay, as liability has already been established and the inquest is solely to determine damages.

In Buczek v. Nationstar Mortg. LLC, 2021 WL 631281, at 7 (W.D.N.Y. Feb. 17, 2021) the Court was faced with a similar issue in a Chapter 13 proceeding of whether to lift the stay to allow a mortgagee to obtain summary judgment in a foreclosure action. The Court held that it was in the interest of judicial economy to allow the foreclosure action to proceed so that the mortgagee could obtain a judgment. Notably, the decision in Buczek relied upon, In re Beaumont, 548 B.R. 437, 442 (Bankr. D. S.C. 2016) which lifted the stay so that the pending state court litigation could proceed where the creditor was already granted summary judgment in a foreclosure action, and Broadhurst v. Steamtronics Corp., 48 B.R. 801, 803 (D. Conn. 1985), where the court found no abuse of discretion where the bankruptcy court recognized the matter involved state law issues and the estate was protected by the requirement that plaintiffs seek enforcement of any judgment through the bankruptcy court.

Likewise, in the present matter there has been a finding of liability and there will be no prejudice to the Debtor to allow the last step in reducing the liability to a final judgment to proceed.

## POINT III

## THE DEBTOR MAKES SEVERAL CRITICAL MISREPRESENTATIONS TO DECEIVE THIS COURT

The Debtor, who spent a decade deceiving Star and stealing millions of dollars from it, has

made blatant material misrepresentations to this Court in an attempt to deceive this Court.

For example, the Debtor argues that the state court dismissed Star's claims for breach of fiduciary duty, breach of duty of loyalty and breach of the faithless servant doctrine. (See Debtor's MOL ¶¶ 10-11, 22). However, to the contrary, the March 10, 2021 Order states "the branch of defendants' motion to dismiss plaintiff's causes of action for breach of duty of loyalty and faithless servant doctrine which **accrued before December 15, 2014, is granted.**" (See Ex. C to Debtor's MOL). Thus, the March 10 Order dismissed the claims for breach of duty of loyalty and faithless servant doctrine merely for the period preceding December 15, 2014 and not for the period after December 15, 2014.[3] By making this material misrepresentation, the Debtor is attempting to ignore a $550,726.86 noncontingent, liquidated, unsecured debt.

Moreover, Filardo also misrepresents to this court that the March 29, 2021 Order is final and non-appealable. (See Debtor's MOL ¶ 11). In fact, the March 29, 2021 Order was appealed and Filardo attempted to stay the appeal prior to commencing his bankruptcy petition. (See Felsen Declaration Exh. F).

Filardo also intentionally omits the fact that Motorsports Advertising only wired to New Vision $453,484.75 out of the $1,419,874.83 and critically, he fails to account for the remaining $966,390.08 that Star paid to Motorsports Advertising.

## POINT IV

## FILARDO'S AFFIDAVIT SHOULD NOT BE CONSIDERED AND SHOULD BE STRICKEN

Filardo failed to appear for his deposition in the state court action resulting in his Answer being stricken. However, on March 2, 2021, he was deposed in <u>Star Auto Sales of Queens LLC</u>

---

[3] Notably, the court did not limit in any manner the statute of limitations for Star's breach of fiduciary duty claim.

13

v. Hanie Iskander et al.; Case No.: 1:19-cv-06791 (RPK) (ST) (E.D.N.Y.) Throughout his deposition in Iskander, Filardo repeatedly invoked his Fifth Amendment privilege when asked about his involvement in Motorsports Advertising and work that Motorsports Advertising purportedly performed for Star.

Thus, Filardo failed to engage in discovery in the state court action brought against him and stonewalled discovery in Iskander.

Filardo was on the verge of having a large judgment entered against him at an inquest on the day that he filed a bankruptcy petition with this Court. His petition resulted in an automatic stay. He is now attempting in bankruptcy court to provide evidence on matters on which he stonewalled discovery by not appearing for a deposition and refusing to answer questions and then invoking his Fifth Amendment privilege at another deposition. To the extent he is now attempting to revoke his invocation of the Fifth Amendment privilege, he should be precluded from doing so.

"Though constitutionally protected, a civil litigant's invocation of the privilege against self-incrimination during the discovery process is far from costless. It will, for example, always disadvantage opposing parties -- at least to some extent -- since it keeps them from obtaining information they could otherwise get." United States v. 4003-4005 5th Ave., 55 F.3d 78 (2d Cir. 1995).

In determining whether a court should permit a party who invoked his Fifth Amendment privilege to revoke the privilege, "Courts need to pay particular attention to how and when the privilege was originally invoked." Id. Since an assertion of the Fifth Amendment is an effective way to hinder discovery and provides a convenient method for obstructing a proceeding, trial courts must be especially alert to the danger that the litigant might have invoked the privilege primarily to abuse, manipulate or gain an unfair strategic advantage over opposing parties." Id.

14

In 4003-4005 5th Ave., the court refused to permit the defendant to submit in evidence any material previously claimed by him to be within the privilege against self-incrimination where he had utilized the Fifth Amendment in an abusive or manipulative fashion, by "asserting and waiving the privilege when convenient" and by "persistently asserting his Fifth Amendment rights throughout the pendency of this proceeding" and "then seeking to waive or deny the existence of the privilege on the eve of trial or the equivalent thereof." Id. The court explained: "[h]is history of obstruction suggests that Tapia-Ortiz was simply using all available techniques -including the Fifth Amendment -- to hinder and delay the Government's action. On these facts, the District Court was entitled to conclude that Tapia-Ortiz ought not to be allowed to block the Government's action through such means, and especially ought not, without sanctions, to be allowed to use the Fifth Amendment to further his obstructionist purposes. Id. at 86; see also United States v. The Incorporated Village of Island Park, 888 F. Supp. 419 (E.D.N.Y. 1995) (refusing to permit the submission of affidavits opposing summary judgment when the defendants had previously blocked testimony during their depositions by invoking the Fifth Amendment); City of New York v. Golden Feather Smoke Shop, 2010 WL 2653369 (E.D.N.Y. June 25, 2010) (refusing to permit a witness to submit a declaration opposing a motion to find him in civil contempt because he had previously stymied attempts to depose him by repeatedly invoking the Fifth Amendment and holding that the witness' gamesmanship created significant prejudice to the opposing party and was an abuse of the discovery process);

Here, Filardo refused to be deposed in the state court action against him and at his deposition in the Iskander case on March 2, 2021, he refused to answer any substantive questions instead invoking his Fifth Amendment privilege stymying discovery and leading to his answer being stricken in the state court action against him. He has never attempted to revoke the privilege.

However, he is attempting now, for the first time, to offer evidence in this bankruptcy proceeding concerning matters for which he previously invoked the Fifth Amendment. As in each of the above cases, Filardo must be precluded from doing so.

Therefore, this court should not consider any aspect of Filardo's affidavit submitted in support of his motion objecting to the proof of claim filed by Star and should strike same.

## CONCLUSION

For the reasons stated herein, it is respectfully requested that the Court deny the Debtor's motion objecting to proof of claim # 8-1 filed by Star Auto Sales of Queens, LLC and dismiss this action, together with such other and further relief as this Court deems appropriate.

Dated: Lake Success, New York
December 10, 2021

                                               BERGER, FISCHOFF, SHUMER, WEXLER & GOODMAN, LLP

                                               By:   \s\ Gary C. Fiscoff
*Attorneys for Star Auto Sales of Queens LLC*
6901 Jericho Turnpike, Suite 230
Syosset, NY 11791
(516) 747-1136
gfischoff@bfslawfirm.com

                                             MILMAN LABUDA LAW GROUP PLLC

                                             By:   \s\ Jamie S. Felsen
*Attorneys for Star Auto Sales of Queens LLC*
3000 Marcus Avenue, Suite 3W8
Lake Success, New York 11042
(516) 328-8899
jamie@mllaborlaw.com

To:    All Counsel of Record